(55 Misc. Rep. 302)

## NATIONAL SURETY CO. v. DI MARSICO.

## SAME v. McCANN.

(Supreme Court, Appellate Term. June 27, 1907.)

1. APPEAL—REVIEW—FINDINGS OF JUSTICE.

A finding of a trial justice on a disputed question of fact will be sustained on appeal, if there is any credible evidence to support it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3979.]

2. PRINCIPAL AND SURETY—SUCCESSIVE BONDS—CUMULATIVE LIABILITY.

Where successive fidelity bonds are given for the faithful discharge of a trust, all the bonds, though given at different times during the continuance of the trust, are cumulative, and the sureties on each stand in the relation of co-sureties to those on all the other bonds.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Surety, § 581.]

3. SAME—LIABILITY OF SURETIES—CONTRACT INTER SE.

Where successive fidelity bonds were given to indemnify the public against defalcations of a city marshal, no understanding between the sureties on the different bonds could limit the liability of certain of the sureties to the public.

4. SAME—CONSIDERATION.

Want of consideration is no defense to a liability of sureties on a city marshal's fidelity bond to the public.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Surety, § 63.]

5. SAME—CONTRIBUTION.

Co-sureties on successive fidelity bonds given by a city marshal to the public, though ignorant of the existence of each other, are entitled to contribution from each other, in the absence of equities as between themselves.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Surety, § 605.]

6. SAME—SUBSTITUTION OF BONDS—EVIDENCE.

In an action to enforce contribution as between sureties on successive bonds given by a city marshal, he testified that after the filing of the bond on which defendants were sureties he applied to plaintiff for a bond, and told the person to whom he applied that he was anxious to get a new bond and had promised his other sureties to release them, and would consider it a favor if plaintiff would give witness a bond, which he was informed would cost him $15. *Held* insufficient to show that plaintiff, in consideration of the premium, agreed to procure the cancellation of defendant's bond and give its own bond as a substitute therefor.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Actions by the National Surety Company against Michele Di Marsico and against Bernard J. McCann. From judgments in favor of each defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and SEABURY and PLATZEK, JJ.

Porter & Barnes, for appellant.

Simmons & Harris, for respondents.

GILDERSLEEVE, P. J. These actions were tried at the same time. In each action the National Surety Company seeks to recover one-third of the loss sustained by it as surety upon the official bond of one Samuel K. Ellenbogen, a marshal of the city of New York. On March 17, 1904, a bond in the penal sum of $2,000, wherein the defendants were sureties, conditioned for the faithful performance by the said Ellenbogen of the duties of his office, was filed in the office of the city clerk. On June 25, 1905, a bond similar in terms and obligations was filed by the plaintiff in the office of the city clerk. Thereafter plaintiff as such surety was compelled to make restitution to the amount of $508.74 for defalcations of the said marshal. It is plaintiff's claim that each of the defendants should contribute one-third of such loss. The justice in each case gave judgment for the defendant. Plaintiff appeals.

The defendants allege that in April, 1905, they notified Ellenbogen to obtain new sureties to take their place; that plaintiff agreed, for a good consideration, to procure a cancellation of the bond on which defendants were sureties, and to give its own as a substitute therefor; that defendants received no consideration from Ellenbogen for becoming sureties on Ellenbogen's bond; and that by an agreement between them and Ellenbogen their bond of March 17, 1904, was to be enforced only until Ellenbogen should procure another bond with a different surety. As the justice found for the defendants, we shall accept their version as correct upon disputed questions of fact, where supported by any creditable evidence. The bond of defendants was on file, uncanceled and apparently in full force and effect, at the time of the defalcation, and there is nothing to indicate on the official record that the bond of the plaintiff was filed as a substitute therefor. At the time of Ellenbogen's misdeeds the plaintiff and defendants occupied identical positions with reference to any person aggrieved by the official misconduct of the said marshal. There was a common creditor (i. e., the person or persons aggrieved), a common debtor (i. e., Ellenbogen), a common debt (i. e., the defalcations), and written undertakings by the plaintiff and defendants to pay that debt. The fact that the sureties assumed their liability by different instruments and at different dates does not affect the situation, as the general rule is that, in cases where successive bonds are given for the faithful discharge of a trust, all the bonds given during the continuance of the trust are cumulative, and the sureties on each bond stand in the relation of co-sureties to the sureties on all the other bonds. Pickens v. Miller, 83 N. C. 543; Bergen v. Stewart, 28 How. Prac. 6; Ketter v. Thompson, 76 Ky. 287. As the bonds were to indemnify the public against defalcations of El-

lenbogen, no understanding between defendants and Ellenbogen could limit defendants' liability to the public under the bond; nor does any want of consideration to defendants from Ellenbogen affect defendants' liability under the bond so far as the public are concerned.

It is an accepted principle that co-sureties of the same obligation, even though ignorant of the existence of each other, who occupy the same position in respect to the principal and are without equities as between themselves giving an advantage to one over the other, are entitled to contribution from each other. The plaintiff and defendants, under the circumstances shown to exist in the case at bar, must be held to be co-sureties for a common principal, one of which sureties —i. e., plaintiff—paid the whole of a debt for which they are all bound; and the question to be determined is whether any equities are shown to exist in favor of the defendants as against plaintiff to prevent the application of the doctrine of contribution. The law required but one bond to be filed by the marshal. Ellenbogen swears that he promised defendants to get another bond in place of theirs, so as to discharge them from their obligations thereunder; that thereafter he applied to the plaintiff for a bond. He also testifies:

"Q. Before you got the bond, what conversation did you have with the gentleman from their office? Plaintiff's Counsel: I object to the words 'gentleman from their office.' The Court: Oh, well; with a person soliciting the bond or to whom he gave the order for the bond. Plaintiff's Counsel: I object to any conversation with any person, unless it is shown that such person was authorized to bind plaintiff. (Objection overruled. Exception.) A. I told the gentleman I was anxious to get a new bond, as I promised my previous sureties to release them, and I would consider it a favor if they would give me a bond. Q. Did he state what the premium would be? A. He told me it would cost me $15. Q. Was it on payment of that amount to the company that you got your bond? A. Yes."

This is practically all the evidence tending to show that plaintiff agreed that its bond should be merely a substitute for that of defendants' and consenting to the cancellation of the latter. Had defendants shown, as they allege, that Ellenbogen communicated to plaintiff his promise and desire to release defendants from their obligation and to substitute plaintiff's bond in place of that of defendants, and that plaintiff, in consideration of the premium, agreed to procure a cancellation of the defendants' bond, and give its own bond in place thereof, and that the subsequent filing of said bond was intended by plaintiff as a substitute for the bond of defendants', the plaintiff would have no equitable claim for contribution from defendants, and the judgments in favor of defendants could be sustained. The evidence, however, is too indefinite to connect any authorized representative of plaintiff with a consent to the substitution of plaintiff's bond for that of defendants' and for a cancellation of the latter. We are of opinion that a new trial should be granted.

Judgments reversed, and new trial ordered, with costs to appellant to abide the event. All concur.