70 N.W.2d 555 (1955)
Gustav E. NELSON and Gerald Penly, Appellants,
v.
BOARD OF DIRECTORS OF INDEPENDENT SCHOOL DISTRICT OF SIOUX CITY, Iowa, acting as the Board of Trustees of the Pension, Annuity and Retirement System of said District, Appellees.
No. 48728.
Supreme Court of Iowa.
June 7, 1955.
*556 Free & Free, Sioux City, for appellants.
Stewart & Hatfield, Sioux City, for appellees.
Brunk & Janss, Des Moines, amicus curiae.
OLIVER, Justice.
Petitioners Nelson and Penly, teachers in the Independent School District of Sioux City, brought this action in certiorari, as a class action under 58 I.C.A. Rule 42, Rules of Civil Procedure, against the Board of Directors of the Independent School District of Sioux City acting as the Board of Trustees of the pension, annuity and retirement system of the district, to review and set aside its acts for the termination and liquidation of such system.
Chapter 387, Acts 37th G.A., now, as amended, sections 294.8, 294.9 and 294.10, Code of Iowa 1954, I.C.A., authorized any independent school district in a certain class, to establish a pension and annuity retirement system for its teachers, the fund to be created from an annual tax not exceeding two-tenths mill, an assessment of the teachers not to exceed 1% of their annual salaries, and the interest on any permanent fund. The Board of Directors of the school district constituted the Board of Trustees, which formulated the plan and made rules and regulations for its operation.
Under this statute the pension and annuity retirement system of the Independent School District of Sioux City was adopted in 1927. It provided that all regular teachers employed on contract should be employed subject to, and all future contracts for employment, should contain as a part and condition thereof the rules governing this system. Any person who had been regularly employed as a public school teacher for thirty years, including fifteen years in this district, and had paid $200 into said fund, might retire at the age of 55 years upon a pension of $600 per year. Retirement was compulsory at 70. Provision was made also for retirement pay for disabled teachers.
The plan provided for two funds, current and permanent. Annuities and expenses were paid from the current fund created by the tax, the retention of 1% of the teachers' salaries and interest from the permanent fund. The surplus in the current fund for any year was to be placed in the permanent fund and invested in securities. If the current fund at any time was insufficient to pay the benefits allowed, each beneficiary was to be paid his proportionate annuity in full settlement of claims for that year. "No teacher shall have any vested interest in or to the funds created or any part thereof, * * *." No heirs, legatees or assignees were entitled to any portion of the fund. The Board reserved the right to modify the rules of the plan. Subsequently, amendments to the statute authorized the Board to increase the assessment upon teachers' salaries to such percentage as a majority of the teachers should agree to pay, and authorized tax levies to produce equal amounts. From 1941 the teachers contributed 1½ per cent. of their salaries and the tax supplied an equal amount.
As required by statute (see section 279.13, Code of Iowa 1954, I.C.A.) all contracts with teachers were in writing for one year. *557 Each annual contract provided that one (or 1 ½ per cent. of the teacher's salary be paid into the Teachers' Retirement Fund.
In 1950 the Congress of the United States amended the Social Security Law to permit the inclusion in the Federal Social Security System of public school teachers and other state employees. Title 42, section 418, U.S. C.A., provides in part:
"(a) (1) The Administration shall, at the request of any State, enter into an agreement with such State for the purpose of extending the insurance system established by this subchapter to services performed by individuals as employees of such State or any political subdivision thereof. * * *"
(d) Provides any group to be eligible for federal coverage must not be covered by any retirement system.
In 1953 the 55th G.A. enacted the Federal Social Security Enabling Act, now Chapter 97C, Code of Iowa 1954, I.C.A., to extend to employees of the state and their dependents and survivors the protection accorded to others by the Old Age and Survivor Insurance System embodied in the Social Security Act. The 55th General Assembly enacted also Chapter 121 entitled in part, "An Act to permit the liquidation of the pension and annuity retirement system of public school teachers * * *." The statutes thus amended or enacted are now sections 294.11, 294.12, 294.13 and 294.14, Code of Iowa 1954, I.C.A. The Board of Directors of any district is authorized to terminate such local system by resolution and to provide for its liquidation. In this process teachers are divided into two classes. Those who are drawing or entitled to draw retirement pay at the date of termination of the system are called surviving beneficiaries. They are to receive their full retirement benefits regularly from the retirement liquidation fund composed of all funds and accumulations of the system, with such additional amounts as may be necessary to be raised by taxes. There is no complaint from this class. The other class is composed of those teachers not eligible for retirement benefits. They are referred to as members of such system. Plaintiffs were such members for more than 20 and 14 years, respectively.
The statute provides: "Any amount in excess of the actuarial equivalent of the sum required to pay such benefit payments shall be apportioned to * * * members * * *." I.C.A. § 294.12. However, actuarial computations indicated the funds of the system would have been exhausted in fifteen or twenty years had it been continued. The trial court found the system was actually unsound because of insufficient contributions to the funds by the teachers and school district. Hence, it appears there was a shortage in these funds rather than a surplus to be apportioned to members. The statute provides also for the raising of funds by taxation to repay "members", in five equal annual installments, the amount, without interest, paid into the fund by such respective members.
The resolution of the board of directors here in question was adopted June 1, 1953. The preamble states it is possible for public school districts and their employees to become a part of the Federal Social Security System, that it has been recommended that they take action to make themselves eligible for that system and that this requires the termination of the present retirement system. It was resolved that the local system be terminated June 30, 1953; that all its funds be held in accordance with the laws of Iowa, for the surviving beneficiaries only; that the contributors to the local system, not entitled to benefits on that date, be repaid from tax levies the amount paid by each, in five equal annual installments, without interest, and that all necessary steps be taken to qualify the district and its employees for membership in the Federal Social Security System. Plaintiffs and other employees of the District were taken into the Social Security System, July 1, 1953.
Plaintiffs pleaded the Board of Directors was proceeding illegally to abolish the pension, retirement and annuity system; that *558 its resolution was void and arbitrary, had impaired the obligations of their contracts of employment, and would violate the terms thereof by depriving them of their rights and privileges of retirement annuity without just compensation therefor, would destroy the system and result in the loss of their accumulated rights thereunder and that the refund of their contributions without interest would deprive them of their property rights without just compensation, contrary to law.
The trial court adjudged valid the procedure adopted to terminate the district pension and annuity retirement system and annulled the writ of certiorari. Plaintiffs have appealed.
I. It is clear the liquidation plan adopted by the Board complies with the statutes enacted for that purpose. Under this plan teachers already drawing or entitled to draw retirement benefits will receive the same in full. The actions of the Board and others, under the legislation in question, will have served to accomplish, not only the liquidation of the local system, but also the entrance of the school district and its teachers into the social security system.
In effect this is the substitution of a strong retirement system for one of questionable stability. It is true, members of the local system will lose their status therein. However, they will be repaid the amounts paid in by them, respectively, despite the financial instability of the local system. The provisions of the federal social security system are more favorable to members and their dependents than were those of the local system. Under the circumstances the required change from the local to the social security system does not appear to have been harsh or unfair to plaintiffs, and benefits accruing to them and their dependents under social security should eventually exceed those to which they would have been entitled under the local system.
II. The main question in this case is whether plaintiffs had contractual or vested rights in the retirement system or in a pension thereunder, which were affected by the abolishing of the local system and the substitution of the social security system. Many decisions from various jurisdictions are cited by counsel on each side.
Plaintiffs pleaded they had, in all respects, carried out ther contracts with reference to the retirement system. However, one of them was not eligible to retire and the other had not then elected to apply for retirement. Their rights to retirement benefits were inchoate and prospective only. Decisions of this court and of a majority of others hold such prospective rights are not vested or contract rights which may not be adversely affected by subsequent legislation or procedure.
Talbott v. Independent School District, 230 Iowa 949, 299 N.W. 556, 563, 137 A.L. R. 234, a leading case upon this proposition, involved a school district retirement system organized under the same statute and in most respects substantially the same as this. After holding such retirement payments are not pure pensions, gratuities or bounties but are given for services not fully compensated when rendered, the court stated: "But the fact that these retirement or disability payments are not gratuities, is not, in our judgment, sufficient to give them the character of a property, or a vested, right, or a contract right, which can not be adversely affected by subsequent legislation by either the state or a municipality."
In Talbott the board increased the age for voluntary retirement, to strengthen the finances of the retirement system. There appellee was eligible for retirement but had not applied for it. The court stated: "* * * that notwithstanding the appellee was eligible for retirement prior to the resolution * * * raising the retirement age to 65 years, her pension rights were not absolutely vested, but were subject to the amending resolution." Numerous decisions from other jurisdictions are cited.
Lage v. City of Marshalltown, 212 Iowa 53, 55, 235 N.W. 761, 763, which involved a *559 pension fund maintained in part by deductions from salaries, states:
"* * * So far as we are advised, statutes similar in terms and purpose to our own which have been enacted in many states have never been held to establish a contractual relationship between the [municipality and members] of a police or fire department in such sense at least as that the same may not be repealed prior to the vesting in the officer of a right to demand and receive a pension."
Among other decisions recognizing the rule are Gaffney v. Young, 200 Iowa 1030, 1033, 205 N.W. 865, 867, and Rockenfield v. Kuhl, 242 Iowa 213, 216, 46 N.W.2d 17, 19.
Some like decisions from other jurisdictions are Plunkett v. Board of Pension Commissioners, 113 N.J.L. 230, 173 A. 923, affirmed 114 N.J.L. 273, 176 A. 341; Voorhees v. City of Miami, 145 Fla. 402, 199 So. 313; State ex rel. Casey v. Brewer, 107 Mont. 550, 88 P.2d 49; McLeod v. Fernandez, 1 Cir., 101 F.2d 20, certiorari denied Toste v. MacLeod, 308 U.S. 561, 60 S.Ct. 72, 84 L.Ed. 471; Gibbs v. Minneapolis Fire Dept. Relief Ass'n, 125 Minn. 174, 145 N.W. 1075.
There are annotations upon the subject in 54 A.L.R. 943; 98 A.L.R. 505; 112 A.L. R. 1009, 137 A.L.R. 249.
Hansen v. Public Employees Retirement System Board of Administration, Utah, 246 P.2d 591, was an action by a county employee assailing the validity of an act to liquidate a state retirement system and transfer its public employees to social security. The decision states the overwhelming weight of authority is that such an employee who was not eligible for retirement, had no vested rights in the system or in a pension thereunder, when the system was repealed to enable the state to qualify under the Federal Social Security System.
Raines v. Board of Trustees, etc., 365 Ill. 610, 7 N.E.2d 489, 491, states:
"Under statutes creating teachers' retirement funds by which it is optional with the teachers to come under their provisions by having a certain sum deducted from their salaries, it is held that the election to participate in the fund raises a contractual relation, the terms of which are ascertained by reference to the statute."
Keegan v. Board of Trustees, etc., 412 Ill. 430, 107 N.E.2d 402, refers to the Raines case and states also that statutes requiring compulsory contributions by employees are not contractual in nature and confer no vested rights upon the participants. Plaintiffs quote the foregoing statement from the Raines case and assert the retirement annuity plan in the case at bar was not made mandatory by statute.
It is true no district was required to establish such a system and that a majority of the teachers of a district could consent to increased assessments for all. However when a district adopted the system each regular teacher in the district was compelled to participate. That was the construction which had been placed upon the statute by the parties in this case and in the Talbott case. It will be noted that in the Annotation in 137 A.L.R. 249, 252, 255 the Talbott case is listed under the heading "Compulsory Contributions." Embodied in the yearly employment contracts of each regular teacher was an agreement that the amount assessed be paid into the retirement fund. The contract was subject also to the rules and regulations of the Board. As stated in the Talbott case: "This is not a contract for the payment of a pension, but * * * `it is in essence dependent on a statute,' and the right of the Board to modify it."
We have already pointed out that this case involves, not only the liquidation of the local pension and annuity system, but also the substitution therefor of the more advantageous system embodied in the Federal Social Security Act. Under the circumstances we conclude plaintiffs had no *560 such vested or contract rights in the local system or in pensions thereunder as to make invalid the acts of the Board in the premises.
III. Plaintiffs pleaded also that the Board had failed to properly conserve the retirement funds. However, there was no substantial evidence to establish this allegation and plaintiffs do not predicate error upon this proposition.
The judgment of the district court is affirmed.
Affirmed.
All Justices concur.